IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARKETING INVESTORS CORPORATION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:11-CV-1696-D |
| NEW MILLENNIUM BANK, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order of reference dated November 15, 2011, before the Court for determination is *Plaintiff's Motion to Compel Discovery from Defendant and Brief in Support*, filed November 11, 2011 (doc. 36). Based on the relevant filings and applicable law, the motion to compel is **GRANTED in part and DENIED in part**.

### I. BACKGROUND

Plaintiff Marketing Investors Corporation (Plaintiff) sues New Millennium Bank (Defendant) for breach of contract and the covenant of good faith. In 1999, the parties entered into an agreement under which Plaintiff provided marketing services and distributed credit card offers on Defendant's behalf and received fees for credit card accounts generated through its efforts. In 2010, Defendant instructed Plaintiff to stop soliciting new credit card applications pending review of Defendant's credit card program by the Federal Deposit Insurance Corporation (FDIC). In an administrative proceeding later that year, the FDIC entered a consent order against Defendant directing it to develop a plan to terminate all agreements with third-party providers that exhibited certain characteristics and ordered it to pay civil penalties for multiple violations of federal law. Defendant subsequently terminated its

agreement with Plaintiff, ostensibly under the consent order. Plaintiff claims that the termination was wrongful because the agreement did not exhibit the relevant characteristics, and the consent order did not prohibit Defendant from issuing credit cards. Plaintiff also claims that notwithstanding a prohibition against assignment in the agreement, Defendant advised Plaintiff that it was going to sell its portfolio of credit card accounts generated through Plaintiff's efforts. Plaintiff seeks damages, attorney's fees, costs, and prejudgment and post-judgment interest, as well as injunctive relief preventing Defendant from selling the credit card portfolio generated through its efforts. Immediately after Plaintiff filed this action in state court on July 15, 2011, the state court entered a temporary restraining order (TRO) enjoining Defendant from selling its credit card portfolio. After Defendant removed the action on the basis of diversity jurisdiction, the federal court declined to extend the TRO but allowed Plaintiff to obtain expedited discovery to support its application for injunctive relief.

On July 27, 2011, Plaintiff served its first request for production of documents on Defendant, requesting 16 categories of documents. Defendant initially objected to the requests, but eventually produced 4 categories of documents. At issue in this motion are Plaintiff's discovery requests seeking information regarding Defendant's communications with the FDIC about its credit card portfolio, its decision to terminate the agreement with Plaintiff, and its negotiations for the sale of its credit card portfolio. Specifically, Defendant did not produce documents responsive to Plaintiff's request numbers 1-3, 6-7, 9-10, and 12-16.[1] Defendant also objected to 6 of 11 topics specified for

---

[1]Those requests are summarized as follows:

| Req. No. | Documents Requested |
| --- | --- |
| 1-3 | all documents and communications related to the attempted sale of a portfolio or portfolios of credit card accounts that were generated through Plaintiff's efforts |
| 6 | all written communications between the FDIC and Defendant on the subject of credit card accounts |

examination in a notice of deposition of Defendant's corporate representative in August 2011.[2]

The following month, Plaintiff orally deposed Defendant's corporate representative, Daniel Symonds. During the deposition, Defendant refused to provide information concerning topics 7 and 11, taking the position that any communications with the FDIC are protected from discovery under its regulations. Defendant also refused to answer questions concerning a potential buyer of its credit card portfolio, taking the position that the information was confidential and not discoverable without a court order. Lead counsel for Plaintiff conferred with lead counsel for Defendant regarding its discovery objections, but Defendant maintained that it would not produce the discovery at issue without a court order and that Plaintiff must seek the documents pertaining to the FDIC from the

| 7 | all written orders from the FDIC to Defendant on the subject of credit card accounts |
| --- | --- |
| 9 | all documents referring or relating to Defendant's decision to not renew the agreement |
| 10 | all documents referring or relating to Defendant's decision to terminate the agreement |
| 12 | all documents relating to Defendant's position that the government placed restrictions on its activities concerning credit card accounts |
| 13 | all documents relating to Defendant's position that its relationship with Plaintiff exhibits the characteristics of a Rent-a-BIN arrangement |
| 14 | all documents relating to Defendant's decision to get out of the credit card business. |
| 15 | all documents relating to Defendant's position that restraints of public authority beyond its control rendered it unable to perform its obligations under the Agreement. |
| 16 | all documents relating to Defendant's position that "any other reason" beyond its control rendered it unable to perform its obligations under the Agreement |

[2] The topics subject to the objection are summarized below:

| Topic No. | Content of Topic |
| --- | --- |
| 1-4 | Defendant's efforts to sell its credit card portfolio |
| 7 | communications between Defendant and the FDIC on the subject of credit card accounts |
| 11 | the reasons Defendant purportedly was rendered unable to perform its obligations under the agreement |

- 3 -

FDIC. On October 11, 2011, counsel for Plaintiff sent letters to the FDIC's regional office in New York and the FDIC's general counsel, seeking authority for Defendant to release documents and information to Plaintiff. On or about October 18, 2011, a staff attorney with the FDIC called Plaintiff's counsel to acknowledge receipt of the request and advise that a response would be forthcoming, but would not commit to responding within any particular time.

On November 11, 2011, Plaintiff filed this motion to compel production of documents responsive to document requests 1-3, 6-7, 9-10, and 12-16, and testimony responsive to deposition topics 1-4, 7, and 11. It also requested fees and expenses under Fed. R. Civ. P. 37(a)(5)(A). Relying on *In re Bankers Trust Co.*, 61 F.3d 465, 469-70 (6th Cir. 1995), Plaintiff argues that the FDIC's regulations do not override a court's authority to regulate discovery or authorize Defendant to disobey court orders, subpoenas, or other judicial discovery mechanisms. It also argues that the bank examination privilege does not prevent it from obtaining the discovery it seeks from Defendant, especially where Defendant relies on the allegedly privileged documents as both a sword and a shield, i.e., by allegedly relying on the FDIC's records as a basis for terminating the agreement but resisting discovery concerning those same records.

Plaintiff served the FDIC with a copy of the motion and a copy of the order setting a hearing on the motion to compel. In a letter to Plaintiff dated November 18, 2011, the FDIC pointed out language in 12 C.F.R. § 309.5(g) providing that records related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC are exempt from disclosure (exempt records). It contended that the exempt records were the property of the FDIC, that Defendant did not have the authority to disclose the information without the FDIC's consent, and that Defendant would be unable to provide exempt records in response to Plaintiff's motion. It also contended that after

conducting a "good cause" analysis under 12 C.F.R. § 309.6(b)(8)(ii), it had concluded that certain exempt records regarding Defendant's credit card activities were relevant to this action and would be provided subject to a protective order, as well as certain other conditions to protect the exempt records.

On December 1, 2011, Plaintiff filed a supplemental submission in support of its motion to compel and apparently also served it on the FDIC. It argued that the FDIC's position that the exempt records are the property of the FDIC, as well as its implicit position that its regulations override the court's authority to regulate discovery, was squarely rejected in *In re Bankers Trust Co.*. It also argued that the FDIC's position did not account for documents that were in Defendant's possession alone, and that neither Plaintiff nor this court was bound by its unilateral determination of relevancy. Plaintiff noted that it had no way of determining what documents were being withheld by the FDIC and no effective means of challenging its relevancy determinations, and claimed that the FDIC had ignored its request for authorization for Defendant to disclose information by answering deposition questions. Plaintiff also pointed out that the FDIC had been provided notice and an opportunity to assert the privilege but had elected not to file anything with the court asserting its privilege.

The FDIC responded to Plaintiff's supplemental submission in a letter dated December 16, 2011, expressly stating that it was not submitting to the court's jurisdiction because judicial review of FDIC decisions was governed by the Administrative Procedure Act, 5 U.S.C. §§ 702-706. The FDIC reiterated its position that Defendant was prohibited by 12 C.F.R. § 309.6(a) from providing any exempt records or testimony regarding exempt records to Plaintiff. It again offered to produce portions of exempt records that it considered relevant to this litigation and unavailable from other

sources.[3] The FDIC stated that with respect to its motion to compel deposition testimony, Plaintiff had not provided sufficient evidence demonstrating that its need for testimony outweighed the strong public interest in protecting from disclosure testimony regarding privileged information and communications as required by 12 C.F.R. Part 309. The FDIC further stated that documents that were not within its possession but may have been created by Defendant were also protected by 12 C.F.R. § 309.5(g)(8). Finally, the FDIC pointed out that it had not been provided with a privilege log and therefore could not determine which documents Plaintiff referred to and could not respond accordingly.

On December 19, 2011, Defendant responded to Plaintiff's motion to compel. It argued that document requests 6 and 7 were overbroad, that 12 C.F.R. §§ 309.6 and 309.5(g)(8) prohibited disclosure of the requested information, that FDIC records were protected by the bank examination privilege, and that disclosure could subject Defendant to criminal penalties under 18 U.S.C. § 641. It also argued that Plaintiff should seek the documents directly from the FDIC and accept FDIC's formal offer to produce documents. It pointed out that on December 16, 2011, it had responded to Plaintiff's requests 1-3 for communications with one of two potential purchasers of the credit card portfolio, therefore rendering the issue with respect to those documents moot. Defendant also contended that sanctions were not warranted in this case.

On December 21, 2011, this Court held a hearing on the motion to compel. The parties agreed that discovery pertaining to the efforts to sell the credit card portfolio, specifically document requests

---

[3] The FDIC specifically offered to provide sections of the July 10, 2009 Report of Examination (ROE), and correspondence relating to the ROE, that specifically addressed the "unfair and deceptive" marketing materials disseminated by Plaintiff on behalf of Defendant. Even though it offered to produce these records, it maintained that the records were exempt from disclosure under 12 C.F.R. § 309.5(g)(8), and subject to the bank examination privilege.

1-3 and deposition topics 1-4, was no longer at issue. Defendant's overbreadth objections regarding document requests 6 and 7 were overruled at the hearing. Remaining for determination is Plaintiff's motion to compel production of documents responsive to requests 6-7, 9-10, and 12-16, and testimony responsive to deposition topic numbers 7 and 11, as well as its claim for attorneys' fees and expenses.

## II. MOTION TO COMPEL

Plaintiff moves to compel production of documents responsive to requests for production 6-7, 9-10, and 12-16, and testimony responsive to deposition topics 7 and 11. Defendant objects that the records and information are exempt under applicable FDIC regulations and are subject to the bank examination privilege. The burden is on the party resisting discovery to clarify and explain its objections and to provide support for them. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D.Tex. 2005) (*citing McLeod, Alexander, Powel and Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990)).

**A. FDIC Regulations**

Defendant argues that the records and information are exempt under the FDIC's regulations outlined in 12 C.F.R. Part 309,[4] that the regulations prohibit disclosure of the requested records and information, and that Plaintiff should seek the exempt records and information directly from the FDIC through the mechanism for discretionary disclosure outlined in the regulations. Defendant further argues that disclosure may subject it to criminal penalties under 18 U.S.C. § 641.[5] Plaintiff responds

---

[4] Defendant states that regulations restricting access to Office of the Comptroller of Currency and the Federal Reserve Board records are found at 12 C.F.R. §§ 4.31-4.39 and 12 C.F.R. §§ 261.2, 261.11(G), 261.13, 261.14, respectively, but it does not argue that the regulations are applicable in this case.

[5] Section 641 requires civil penalties or imprisonment for anyone who "embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof." Defendant has not shown

- 7 -

that the regulations cannot limit a court's authority to control and compel discovery under the Federal Rules of Civil Procedure and cannot authorize a litigant to disobey a court order, subpoena, or other judicial mechanism requiring it to produce documents or information. Plaintiff also contends that Defendant cannot evade its discovery obligations and force Plaintiff to pursue documents and information in its possession from the FDIC through a cumbersome administrative procedure.

The FDIC regulations at issue prohibit a depository institution, such as Defendant, from disclosing records "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC" without permission or authorization by the FDIC. *See* 12 C.F.R. §§ 309.5(g)(8), 309.6(a) & (b)(7). The regulations state that even if a person has possession, custody, or control of exempt records or information contained in exempt records, all copies of such records remain the FDIC's property and "under no circumstances" may be disclosed without its written authorization. *See id.*, § 309.6(a). Third parties seeking disclosure of exempt records or testimony in litigation in which the FDIC is not a party must submit a request for discretionary disclosure directly to the FDIC. *See id.*, § 309.6(b)(8). The request must specify the information sought with reasonable particularity and be accompanied by a statement with supporting documentation showing in detail the relevance of the information sought to the litigation, justifying good cause for its disclosure, and a commitment to be bound by a protective order. *See id.*, § 309.6(b)(8)(i). Failure to exhaust the request prior to service of a subpoena or other legal process may, in the FDIC's discretion, serve as a basis for objection to the subpoena or legal process. *Id.*

The regulations further provide that the FDIC may, in its discretion and for good cause, disclose or authorize disclosure of any exempt record or testimony sought in connection with any civil

---

that the section would be applicable in this context.

or criminal hearing, proceeding, or investigation without the service of a judicial subpoena, or other legal process requiring such disclosure or testimony, if it determines that the records or testimony are relevant to the hearing, proceeding, or investigation, and that disclosure is in the best interests of justice and not otherwise prohibited by federal statute. *Id.*, § 309.6(b)(8)(ii). Likewise, if a person with custody of FDIC records is served with a subpoena, court order, or other process requiring the person's attendance as a witness concerning any matter related to the production of any exempt record of the FDIC, the person must promptly advise the FDIC. *Id.*, § 309.7(a). Absent written authorization for disclosure by the FDIC, the person required to respond to a subpoena or other legal process must attend at the time and place specified in the subpoena or legal process and respectfully decline to produce any such record or give any testimony with respect thereto based on the regulations. *Id.*, § 309.7(b).

This regulatory process appears to contravene Fed. R. Civ. P. 34, which provides that any party may serve on any other party a request to produce and permit the requesting party to inspect, copy, test, or sample any designated documents that are "in the responding party's *possession, custody or control*." Fed. R. Civ. P. 34(a)(1) (emphasis added). In construing the phrase "possession, custody, or control" under Rule 34, federal courts have universally held that "documents are deemed within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." *In re Wells*, 426 B.R. 579 (N.D. Tex. 2006) (citing *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (citing cases from various circuits)). Since legal ownership of a document is not determinative under Rule 34, "[i]t necessarily follows then that parties in possession of documents forwarded to them by a federal agency have 'possession, custody, or control' within the

meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure." *In re Bankers Trust Co.*, 61 F.3d at 469. Under Rule 34, Plaintiff would be entitled to discover any relevant and non-privileged documents in Defendant's possession, were it not for the FDIC regulations at issue. *See id.*

The Fifth Circuit has not squarely addressed whether courts should defer to the FDIC's regulatory procedure where it conflicts with the Federal Rules of Civil Procedure. In an analogous case, the Sixth Circuit held that federal regulations should be given full force and effect as long as they are based upon a permissible construction of the enabling statute. *See In re Bankers Trust Co.*, 61 F.3d at 469-70 (citing *Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Here, the enabling statute for the FDIC regulations is the housekeeping statute, 5 U.S.C. § 301,[6] which provides that "[t]he head of an executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." *See* 5 U.S.C. § 301. The second sentence of § 301, added in 1958, provides that the section "does not authorize withholding information from the public or limiting the availability of records to the public", however. *Id.*

The legislative history of the housekeeping statute illustrates that Congress added the second sentence to § 301 because it was concerned that the statute had been "twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public and, even, from the Congress." *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (citing 2 U.S.Code Cong. & Admin. News 3352 (1958); *Chrysler Corp. v. Brown*, 441 U.S. 281,

---

[6] The housekeeping statute was formerly codified at 5 U.S.C. § 22.

310 (1978)). "The House Report accompanying the 1958 amendment explained that the proposed amendment would 'correct' a situation that had arisen in which the executive branch was using the housekeeping statute as a substantive basis to withhold information from the public." *Exxon Shipping*, 34 F.3d at 777 (citing H.R. No. 1461, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 3352, 3353)). The Supreme Court has acknowledged that given its legislative history, § 301 is only a "'housekeeping statute,' authorizing rules of agency organization, procedure, or practice as opposed to 'substantive rules.'" *Chrysler Corp.*, 441 U.S. at 310.

Relying on the housekeeping statute's text and legislative history, the Sixth and Ninth Circuits have concluded that the statute does not empower or authorize a federal agency to withhold documents or testimony from federal courts. *In re Bankers Trust Co.*, 61 F.3d at 470; *Exxon Shipping*, 34 F.3d at 774. Although not in this specific context, the Fifth Circuit has also held that the housekeeping statute "cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged" and "cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged." *N.L.R.B. v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961). Had there been any doubt before, the 1958 amendment made it explicit that the housekeeping statute itself does not create a privilege, and that the ultimate determination of a privilege remained with the courts. *Id.*

Based on the housekeeping statute's text, its legislative history, and relevant and persuasive case law, it appears that Congress did not empower the FDIC to prescribe regulations that direct a party to deliberately disobey a subpoena or other legal process requiring the production of information. *See In re Bankers Trust Co.*, 61 F.3d at 470. The language in § 309.7, requiring a party served with a subpoena or other legal process to decline to produce a record or give testimony,

- 11 -

therefore exceeds the congressional delegation of authority. *See id.* "To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here." *Id.* There appears no compelling reason to discard the relatively straight-forward discovery methods under the federal rules for the FDIC's much more cumbersome procedure in this case. *See id.* at 470-71; *accord Merchants Bank v. Vescio*, 205 B.R. 37 (D. Vt. 1997) (finding that no privilege or exemption from discovery arises out of the federal regulations in question). Likewise, § 309.6(b)(8), which requires third parties seeking disclosure of exempt records or testimony in litigation in which the FDIC is not a party to submit a request for discretionary disclosure directly to the FDIC, also exceeds the congressional delegation of authority. *See* 12 C.F.R. § 309.6(b)(8).[7]

In conclusion, the FDIC's regulations do not create an exemption or privilege from discovery for the responsive records and information in Defendant's possession, custody or control that belong to the FDIC in this case. Even if they did, however, Defendant has not produced a privilege log, evidence, or anything else to meet its burden to establish that *all* of the responsive records and information in its possession are exempt records that cannot be produced without FDIC authorization, and/or that it has no records of its own. Its objection to production of the requested documents and testimony based on the FDIC's regulations is overruled.

## B. Bank Examination Privilege

Defendant also objects that the records and information at issue are protected by the bank

---

[7] As noted in *In re Bankers Trust Co.*, 61 F.3d at 470 n.6, the other regulations requiring a party in possession of exempt records to notify the FDIC of any requests for production or testimony are necessary for the FDIC to have notice and the opportunity to intervene and protect any interests, arguments, or concerns it may have.

examination privilege.

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . ." Fed. R. Civ. P. 26(b)(1). The bank examination privilege asserted here is a federal common law privilege[8] "designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications." *See In re Bankers Trust Co.*, 61 F.3d at 471. As the name suggests, the bank examination privilege protects bank examiners' reports from disclosure. *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633-34 (D.C. Cir. 1992). The privilege is a qualified one and protects only agency opinions and recommendations and responses thereto from disclosure; it does not protect purely factual material. *Id.*; *Schreiber v. Society of Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993); *In re Bankers Trust Co.*, 61 F.3d at 471.

The privilege is not an absolute privilege and may be overridden as to deliberative material for good cause, for instance, to promote "the paramount interest of the Government in having justice done between litigants." *In re Subpoena*, 967 F.2d at 634. A court must determine good cause by balancing the competing interests of the parties seeking the documents and those of the government. *In re Bankers Trust Co.*, 61 F.3d at 471-72. In making this determination, the court must consider at a minimum: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the

---

[8] One federal court has found that "[i]n diversity actions where the plaintiff seeks recovery under state law the question of privilege is governed by state law, and federal common law does not apply." *Michigan First Credit Union v. Cumis Ins. Society, Inc.*, 2007 WL 789041, at *3 (E.D. Mich. Mar. 14, 2007) (citations omitted); *see also In Re Powell*, 227 B.R. 61, 64, 67 (Bankr. D. Vt. 1998); *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299 (5th Cir. 2005) (citing Fed. R. Evid. 501) ("The availability of a privilege in a diversity case is governed by the law of the forum state."). The parties do not address, and the Court does not consider, whether the privilege would apply in this diversity case if it is ultimately asserted by the FDIC.

government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *In re Subpoena*, 967 F.2d at 634 (quoting *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 583 (E.D.N.Y. 1979)).

The bank examination privilege "belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party." *Overby v. U.S. Fid. & Guar. Co.*, 224 F.2d 158, 163 (5th Cir. 1955); *In re Bank One Securities Litig.*, 222 F.R.D. 582, 590 (N.D. Ill. 2004) (citation omitted); *Vescio*, 205 B.R. at 42. Where a claim of the privilege is appropriate, the federal agency must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion. *In re Bankers Trust Co.*, 61 F.3d at 472. The agency asserting the privilege has the burden of establishing its applicability to the documents at issue. *Schreiber*, 11 F.3d at 220 (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)).

Here, even if the FDIC is on notice of Plaintiff's motion to compel and has asserted the bank examination privilege, it has not had a proper opportunity to formally assert its privilege or to defend its assertion in this litigation. One reason, as the FDIC has noted, is Defendant's failure to identify, through a privilege log or some other means, the responsive documents in Defendant's possession that Defendant contends may be subject to the FDIC's privilege. In order to allow the FDIC a proper opportunity to assert and defend its bank examination privilege, Defendant must first identify all documents responsive to the discovery requests at issue in its possession, custody or control that it contends may be subject to the FDIC's bank examination privilege. It must then make those documents available to the FDIC to allow it to determine whether the bank examination privilege is applicable and/or whether it intends to assert its privilege as to each of those documents. After conferring with the FDIC regarding the documents for which it intends to assert its bank examination

privilege in this case, Defendant shall compile a privilege log in conformity with Rule 26(b)(5) that identifies those specific documents, if any. After Defendant has produced the privilege log to Plaintiff, with notice to the FDIC, the FDIC may assert and defend its assertion of the bank examination privilege by filing a motion for protective order or otherwise intervening in this action.

### III.  REQUESTS FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to Rule 37(a)(5)(A), Plaintiff seeks attorneys' fees and expenses for bringing this motion, alleging that Defendant did not have a substantial justification for refusing to produce discovery without a court order.

Rule 37(a)(5)(A) provides that if a motion to compel discovery is granted, the court must, after providing an opportunity to be heard, require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, unless: the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court intervention; the non-disclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A).

Although Defendant could have better facilitated the resolution of this issue (by producing a privilege log, for example), its refusal to produce discovery in the absence of a court order was substantially justified given the complexity of the issue and the absence of Fifth Circuit or Supreme Court authority regarding the enforceability of the FDIC's regulations in similar instances. Plaintiff's request for attorneys' fees and expenses is therefore denied.

### IV.  CONCLUSION

Plaintiff's motion to compel discovery is **GRANTED in part and DENIED in part.** Within 7 days of the date of this order, Defendant must identify all documents responsive to the discovery

requests at issue in its possession, custody or control that it contends may be subject to the FDIC's bank examination privilege, and must make them available to the FDIC to allow it to determine whether it intends to assert its bank examination privilege as to each of those documents. After conferring with the FDIC regarding the documents for which it intends to assert its bank examination privilege, Defendant shall compile a privilege log in conformity with Rule 26(b)(5) that identifies those specific documents, if any. Defendant must produce the privilege log to Plaintiff, with concurrent notice to the FDIC, within 30 days of the date of this order, unless otherwise agreed by the parties. The FDIC shall have 7 days from the date that the privilege log has been produced to Plaintiff to assert and defend its assertion of the bank examination privilege by filing a motion for protective order concerning those documents identified by Defendant in the privilege log, if any, or by otherwise intervening in this action, unless otherwise agreed by the parties.

Excepting those documents identified in Defendant's privilege log for which the FDIC intends to assert its bank examination privilege, Defendant must produce all other documents in its possession, custody or control and testimony that are responsive to the discovery requests at issue within 30 days of the date of this order, unless otherwise agreed by the parties. Within 30 days of the date of this order, unless otherwise agreed by the parties, it must also produce a witness to testify regarding the documents that it is producing as a result of this order.

**SO ORDERED** on this 16th day of April, 2012.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE